

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMPOSITES ONE, LLC, ) | |
| ) | |
| Plaintiff ) | No. 05 C 4605 |
| ) | |
| v. ) | The Honorable William J. Hibbler |
| ) | |
| ACRYLON COMPOSITES & ACRYLON ) | |
| PLASTICS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In this messy contract dispute, Composites One believes that Acrylon Plastics agreed to guarantee the debt of Acrylon Composites. Acrylon Plastics asserts it did no such thing. Contracts professors might point to this dispute to warn students about the costs of not fully reducing the terms of an agreement to writing or of doing so haphazardly. The parties each move for summary judgment, but the materials they submit in support of their motions appear to be as hastily compiled as those that form the basis for the dispute.[1] In short, neither party states adequate facts, clearly explains their position, or presents a complete and accurate description of the law. Consequently, the Court denies both motions for summary judgment in their entirety.

John Borland owned and operated Acrylon Plastics, a Winnipeg, Manitoba corporation. (Def. 56.1(a) St. ¶¶ 2, 4; Borland Dep. at 8-13). Sometime in 2003, Borland decided to launch

---

[1] Composites One also moves to strike the affidavit of John Borland. Borland's affidavit neither prevents the Court from granting summary judgment in favor of Composites One nor causes the Court to grant Acrylon Plastics summary judgment motion, and therefore the Court denies Composites One's motion as moot.

1

Acrylon Composites in Grand Forks, North Dakota. (Def. 56.1(a) St. ¶ 3; Borland Dep. at 21, 29). To raise money needed to start Acrylon Composites, Borland used his holding company, 63011 Manitoba to guarantee a loan (or possibly series of loans) from the Bremer Bank. (Borland Dep. at 39, 45-48).

During the time that it operated, Acrylon Composites ordered products from Composites One. (Borland Dep. at 84-89). At least initially, Acrylon Composites placed some of its orders using Acrylon Plastics purchase orders. (Borland Dep. at 84-89).[2] It also appears that as Borland launched Acrylon Composites he sometimes paid its invoices using his personal account or perhaps Acrylon Plastics' account. (Borland Dep. at 84-89; Epp-Vollrath Dep. at 39-41).[3] In December 2003, around the time Acrylon Composites launched, Acrylon Plastics submitted an "account application" to Composites One. (Complaint, Ex. A).[4] According to Chris Epp-Vollrath, who contracted with Acrylon Plastics to manage its financial documents and who also contracted with Acrylon Composites during its start-up phase, Acrylon Plastics submitted the account application on behalf of Acrylon Composites because Acrylon Composites had no credit history. (Epp-Vollrath Dep. at 25-26). The application contains no explicit language stating that Acrylon Plastics would guarantee the debts and obligations of Acrylon Composites. (Complaint, Ex. A).

---

[2] It is unclear exactly how often or even when Acrylon used Acrylon Plastics purchase orders. Neither party includes the purchase orders and the deposition testimony of John Borland on which they both rely is murky and incomplete.

[3] Again, it is impossible to know the frequency with which this occurred, because rather than submitting the actual documents referred to in the depositions, the parties rely solely on deposition testimony, which as noted earlier is less than clear.

[4] The Plaintiff suggests that it attached these materials to its Amended Complaint. It did not. It attached these materials only to its original Complaint.

During February, March and April 2005, Composites One received orders totaling $126,826.31 (the Goods) to be delivered to Acrylon Composites in Grand Forks. (Def. 56.1(a) St., Ex. 17; Complaint, Ex. B). Composites One prepared invoices for the Goods reflecting that the Goods were sold and delivered to Acrylon Composites in Grand Forks. (Def. 56.1(a) St., Ex. 17).

However, Acrylon Composites failed as a business venture, and the bank froze its account and negotiated a sale of its assets (though apparently not its liabilities) to Advanced Closed Moldings, releasing 630११ Manitoba from its guarantee. (Borland Dep. at 37-38, 51). In dissolving the company, Borland either left Acrylon Composites' records with Advanced Closed Moldings or destroyed them (again, his testimony is less than clear. (Borland Dep. at 33-43).

Composites One filed this four-count Complaint against Acrylon Composites and Acrylon Plastics to recover the approximately $126,000 Acrylon Composites failed to pay. Acrylon Composites, not surprisingly, defaulted leaving Composites One to pursue its claims against Acrylon Plastics.

The parties have filed cross-motions for summary judgment. Summary judgment is permissible when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of informing the court of the basis for its motion and identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006). Once a party properly supports a motion for summary judgment, the non-moving party must demonstrate a genuine issue of material fact. *Id.*

When deciding a motion for summary judgment, a court must view the record and all inferences drawn from it in the light most favorable to the non-moving party. *Keri*, 458 F.3d at 628.

A court, however, must draw these inferences from the specific facts in the record. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922-23 (7th Cir. 1994). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri*, 458 F.3d at 628. The rules governing summary judgment apply when the parties file cross-motions. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). A court's role on summary judgment is not to determine the truth or test the credibility of the witnesses, but to determine whether there is a genuine issue of triable fact. For the most part, the parties' cross-motions turn upon a central issue: whether Acrylon Plastics was party to a contract with Composites One.

In the initial Count, Composites One asserts a claim for breach of contract. Central to any breach of contract claim is the existence of an enforceable contract. *Zirp-Burnham, LLC v. E. Terrell Assoc.*, 356 Ill. App. 3d 590, 600, 826 N.E.2d 430, 439 (2005). Although Composites One's argument is not entirely clear, it seems to argue that Acrylon Plastics guaranteed the debts of Acrylon Composites and, therefore, is a party to contract with Composites One. Under Illinois law, a guaranty, like any other contract, must be supported by consideration. That consideration, however, need not flow directly to the guarantor so long as the guarantor enters into the agreement before the obligation. *Tower Inv., LLC v. East Chestnut Consultants, Inc.*, 2007 WL 764433, at *7, — N.E.2d —, — (Ill. App. Ct. Mar. 14, 2007).

The basis for Composites One's guarantee argument is a December 2003 account application that it attaches to its Complaint (though, surprisingly, not to its Amended Complaint nor to its summary judgment materials). But the parties do not dispute that in December 2003 Acrylon Plastics submitted an account application to Composites One because Acrylon Composites had no credit history. In addition, Composites One points out that Acrylon Plastics, at least initially, paid

4

the bills incurred by Acrylon Composites, that Acrylon Composites directed its correspondence with Composites One through Acrylon Plastics (among other things by using their e-mail accounts and purchase order forms). Further, Composites One points out that, at least initially, it held orders to Acrylon Composites until Acrylon Composites paid for the order (either through Borland or through Acrylon Plastics). Composites One suggests that these undisputed facts sufficiently demonstrate Acrylon Plastics' intent to guarantee the debt of Acrylon Composites.

Acrylon Plastics argues, on the other hand, that the invoices all identify Acrylon Composites as the customer and that the goods were in fact delivered to Acrylon Composites and not to Acrylon Plastics. This argument, however, misses the point of Composites One's guarantee argument — that Plastics agreed to pay the debt if Acrylon Composites defaulted.

The account application on which Composites One bases its theory, however, is woefully lacking in detail. The front of the application contains the name only of Acrylon Plastics, a signature, and a date. Nowhere on the account application is there any reference to the idea of a guarantee. Further, nothing on the application specifies the terms and conditions of any alleged guarantee. *See Zirp-Burnham, LLC*, 356 Ill. App. 3d at 600, 826 N.E.2d at 439 (contract should have definite and certain terms). It is true, that Chris Epp-Vollrath testified at her deposition that Acrylon Plastics submitted the application on behalf of Acrylon Composites because Acrylon Composites had no credit history during its start-up phase. But Epp-Vollrath never testified that Acrylon Plastics intended to guarantee the debt of Acrylon Composites in perpetuity. And the other evidence, consisting mostly of deposition testimony regarding the issue, is equally murky. Neither party questioned Borland regarding the length of time he paid the accounts of Acrylon Composites using personal funds or funds from Acrylon Plastics and neither party questioned Epp-Vollrath regarding

her understanding of whether the account application was meant to serve as a guarantee. Further, neither party includes the actual purchase orders as exhibits to their summary judgment motions.

The Court could draw several reasonable inferences from the incomplete set of facts presented by the parties. For instance, given that Epp-Vollrath testified to Acrylon Composites difficulty obtaining credit and the incomplete account application, the Court could reasonably conclude that the account application and the relevant deposition testimony is that Acrylon Plastics did indeed submit the account application in order to guarantee the debt of Acrylon Composites. But another, equally reasonable, inference that the Court may draw is that the account application served only as a guarantee for Acrylon Composites initial debts (those for goods that Composites One held back until payment was made). In short, despite the presence of many undisputed facts, the material facts — whether the parties meant the account application to serve as a guaranty and if so for how long and under what terms — are absent. The choice between reasonable inferences from facts is a jury function, and the Court therefore refuses to grant summary judgment to either party on Count I.

Composites One and Acrylon Plastics both assert they are entitled to summary judgment on Count II, Composites One's claim for an account stated. In support of its argument, Composites One points to the one page statement of Acrylon Composites account that it attached as Exhibit B to its Complaint. Composites One bases its argument on an incorrect understanding of the requirements of an account stated. An account stated is not in and of itself an independent theory of recovery. *Dreyer Med. Clinic S.C. v. Corral*, 227 Ill. App. 3d 221, 226, 591 N.E.2d 111, 114 (1992). Instead, an account stated is a form of proving damages for a breach of promise to pay on a contract. *D.S.A. Finance Corp. v. County of Cook*, 345 Ill. App. 3d 554, 560, 801 N.E.2d 1075, 1080 (2003). A

party seeking to recover under a theory of account stated must still prove an underlying contractual obligation. *Dreyer Medical Clinic S.C.*, 591 N.E.2d at 114. Because summary judgment is not appropriate on Count I regarding the underlying contractual obligation, it also is not appropriate on Count II. The Court therefore denies both parties' motions for summary judgment on Count II.

In Count III, Composites One argues that, because Acrylon Plastics received the benefit of the goods that it shipped to Acrylon Composites, it should recover under a theory of *quantum meruit*. Composites One never really explains why it believes that Acrylon Plastics received the benefit of the goods despite the fact that the goods were shipped to Acrylon Composites. It makes a fleeting reference to what appears to be a theory based upon piercing the corporate veil — suggesting in its argument regarding Count II that there was not a distinction between Acrylon Plastics and Acrylon Composites. But Composites One neither explicitly states this as the basis for its *quantum meruit* argument nor ties the undisputed facts to the law. Although there certainly are facts on which to base a corporate veil theory — most notably the intermingling of funds and the sharing of personnel and facilities — the Court will not construct Composite One's argument for it. *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1006-07 (7th Cir. 2004).

Just as Composites One fails to develop its theory, so to does Acrylon Plastics. Acrylon Plastics baldly asserts that it did not receive the benefit of the goods. The undisputed facts show, at the minimum, that Acrylon Plastics, Acrylon Composites, and Borland commingled funds, that Acrylon Composites used Acrylon Plastics' invoices to order the goods, and that Acrylon Plastics employees served as contact points regarding these orders. Given these facts, a jury could conclude that, despite the fact that the goods were shipped to Acrylon Composites, Acrylon Plastics

nonetheless received some benefit from the goods. Accordingly, the Court denies both parties' summary judgment motions on Count III.

Finally, neither party adequately explains their position with regard to Count IV (spoliation). Composites One complains of two principal categories of document destruction: (1) paper documents that Borland lost or disposed of during the sale of Acrylon Composites (Borland Dep. at 43); (2) electronic mail saved on Acrylon Plastics' computer systems. (McIntosh Dep. at 50, 85-86).

It is undisputed that Borland threw away documents, or, perhaps, lost them (he claims he did not care what became of the documents). Unfortunately, neither party fully fleshed out what these documents might have contained. Perhaps they contained information related to the Acrylon Composites purchases — but perhaps they did not. The Court is unable to discern what the documents might have contained because no one asked Borland what they might have contained. Essential to a claim for spoliation is that the destruction of evidence causes a party to be unable to prove an otherwise valid cause of action. *Cangemi v. Advocate South Suburban Hosp.*, 364 Ill. App. 3d 446, 471-72, 845 N.E.2d 792, 814-15 (2006). Because neither party explores the issue of precisely what these records contained (or did not contain), the Court cannot determine whether the destruction of them caused Composites One to be unable to prove its case. Summary judgment therefore is not appropriate.

Acrylon Plastics offers another reason why the Court should grant its motion for summary judgment. Acrylon Plastics asserts that "Acrylon Composites allowed certain of its documents to be destroyed when selling its assents to a third-party," attributing Borland's carelessness (or malice) to Acrylon Composites. But Borland acted as president of both Acrylon Composites and Acrylon

Plastics and Acrylon Plastics cannot conveniently attribute his acts solely to Acrylon Composites — particularly when the undisputed evidence suggests that Borland kept and maintained many of Acrylon Composites' records at Acrylon Plastics' facilities and by utilizing Acrylon Plastics employees.

With regard to the information contained on the computer, Composites One still cannot demonstrate that the destruction of evidence prevented it from proving its case. Composites One never explains why it did not itself archive any e-mails that it exchanged with Acrylon Composites and Acrylon Plastics. If it had done so, Acrylon Plastics destruction of the computers would not impair its ability to prove its case (and therefore it could not sustain a spoliation claim). Perhaps something in Acrylon Plastics' e-mail system prevented it from doing so. Perhaps it lost the e-mails prior to deciding to file suit. In any event, as the record stands, the Court cannot determine whether the alleged destruction of e-mails (and other potential information on Acrylon Plastics' computers) impaired Composites One's ability to prove its case. By the same token, neither can the Court determine that Acrylon Plastics is entitled to judgment as a matter of law. Acrylon Plastics has pointed to nothing in the record to convince the Court that the destruction of information on its computer systems could not sustain a claim for spoliation. Accordingly, the Court denies both parties' motion for summary judgment on Count IV.

Both parties insist that the record supports their claims for summary judgment. But neither party includes critical pieces of evidence to support their claims (for instance, the purchase orders at least some of which allegedly used Acrylon Plastics letterhead) or adequately fleshes out the testimony of the witnesses. The Court simply has insufficient factual information to determine what actually happened — a rarity in a contract dispute. In short, the record leaves more questions

9

unanswered than it answers and the Court may not fill in the blanks by drawing inferences in favor of one party or the other. Both motions for summary judgment are DENIED.

IT IS SO ORDERED.

4/18/07
Dated

Hon. William. J. Hibbler
United States District Court